**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

MICHAEL DENNIS BATEY,

     Petitioner,

v.

                                CASE NO. 05-CV-73699-DT
                                HONORABLE DENISE PAGE HOOD
SHERRY L. BURT,               UNITED STATES DISTRICT JUDGE

     Respondent.

_____/

## OPINION AND ORDER CONDITIONALLY GRANTING
## THE PETITON FOR WRIT OF HABEAS CORPUS

    Michael Dennis Batey, ("Petitioner"), presently confined at the Parnall

Correctional Facility in Jackson, Michigan, has filed a *pro se* petition for writ of

habeas corpus pursuant to 28 U.S.C. § 2254, in which he challenges his

conviction for first-degree criminal sexual conduct, M.C.L.A. 750.520b. [1]  For the

reasons stated below, the petition for writ of habeas corpus is CONDITIONALLY

GRANTED.

### I.  Introduction

    Petitioner was convicted of the above offense following a jury trial in the

Allegan County Circuit Court.  Petitioner was acquitted of a second count of

---

[1]  When petitioner originally filed his petition for writ of habeas corpus, he was incarcerated at the
Florence Crane Correctional Facility, but has since been transferred to the Parnall Correctional Facility.
The only proper respondent in a habeas case is the habeas petitioner's custodian, which in the case of an
incarcerated habeas petitioner would be the warden of the facility where the petitioner is incarcerated. *See
Edwards Johns,* 450 F. Supp. 2d 755, 757 (E.D. Mich. 2006); *See also* Rule 2(a), 28 foll. U.S.C. § 2254.
Therefore, the Court substitutes Warden Sherry L. Burt in the caption.

criminal sexual conduct.  This Court recites verbatim the relevant facts relied

upon by the Michigan Court of Appeals, which are presumed correct on habeas

review pursuant to 28 U.S.C. § 2254(e)(1).  *See Wagner v. Smith,* 581 F.3d 410,

413 (6th Cir. 2009):

> A jury convicted defendant Michael Batey of first-degree criminal sexual conduct (CSC I) for engaging in oral sex with his nephew, MA.  The trial court sentenced Batey to fifteen to forty-five years' imprisonment.  He appeals as of right.  We affirm.

> ### I. Basic Facts And Procedural History

> According to MA, Batey began to abuse him sexually was when he was fourteen or fifteen years old.  On that first occasion, MA said, he and Batey were in the field behind Batey's house picking berries in the bushes while MA's brother, JA, was at the house.  Batey reportedly asked if he could see MA's penis.  MA first said no, but after Batey persisted, he said yes.  MA claimed that he saw then that Batey had his penis out of his pants, JA was standing there, and Batey started to masturbate in front of him.  The next day, MA said, Batey told him that he wanted to fellate him.  MA initially said no, but eventually relented after Batey reassured him that this sort of behavior between uncles and nephews was normal.  After Batey performed fellatio on MA, he asked MA if MA would perform the same act on him.  MA again resisted the idea, but finally agreed to perform the act after additional persuasion from Batey.  MA testified that this type of sexual activity went on every time he went over to Batey's house for about a year, and that he had oral sex with Batey approximately twenty-five times.

> After the prosecutor charged Batey with CSC I and the case went to trial, JA testified that he started drinking when he was about thirteen and that Batey gave him alcohol every time he went to Batey's house. "He would get me all plastered and I'd wake up and my pants would be down, you know, it was scary."  JA stated that Batey gave him cigarettes and money and told him, "don't tell anybody."  JA said that he would protest this conduct sometimes, when he was not drunk, but then he would finally accede to it.  As JA said, "I was heterosexual and I was getting confused ... thought I was gay ... confused, say I'm gay,

then change my mind and say I'm not gay." JA claimed that Batey manipulated him, he had "mind play over me." JA also said that he had oral sex with Batey so many times that he could not recall the exact number of instances. He also claimed to have had anal sex with Batey several times.

JA also recalled seeing Batey molest MA. For instance, JA recalled one occasion when he was standing in front of the doorway at Batey's house, he could see into the bedroom when Batey was performing oral sex on MA. JA said that he became confused and did not know whether to tell anyone, nor did he know if anyone would believe him. According to JA, the next month he asked MA what he would say to their mother if JA told her what he saw. When MA was admitted to Pine Rest, a residential rehabilitation program, JA told his parents that he knew why MA had a nervous breakdown. When they asked him why, "I told them everything, I just opened up." He told them about "[a]ll the sexual molestation, everything with me and [MA] and Mike [Batey]."

Robin Zollar, a psychotherapist who specializes in sexual assault and sexual abuse, also testified for the prosecution at trial. She said that child victims of sexual assault normally do not tell anyone immediately. According to Zollar, there is "delay in disclosure" because of embarrassment, pressure, secrecy or coercion. In her view, it was not uncommon to find mental health problems in children who are victims of sexual abuse because of the betrayal of trust. Nor would she find it strange if a child victim recanted any accusations of molestation, denying that it occurred.

Several of Batey's friends and former lovers testified on his behalf, either to impeach the credibility of MA and JA or to provide alibi testimony. Batey did not testify.
*People v. Batey,* No. 227117, * 1-2 (Mich.Ct.App. August 27, 2002).

Petitioner's conviction was affirmed on appeal. *Id., vacated in part,* 469 Mich.

900; 668 N.W. 2d 628 (2003)(Kelly, J. would remand also for consideration of

defendant's allegations of prosecutorial misconduct). On remand, the conviction

was again affirmed. *People v. Batey,* No. 227117 (Mich.Ct.App. December 30,

2003); *lv. den.* 471 Mich. 882; 686 N.W. 2d 487 (2004)(Kelly, J., with Cavanagh, J.,
dissenting).

Petitioner then filed a petition for writ of habeas corpus with this Court, in
which he sought habeas relief on the following grounds:

> I. The Petitioner was denied a fundamentally fair trial, where his Sixth
> and Fourteenth amendment rights were violated, when a juror decided
> not to disclose information about her relationship with a prosecution
> witness, the father figure of the complaint, during *voir dire*.
>
> II. Petitioner's Sixth and Fourteenth Amendment rights were violated,
> where the trial court denied motions to dismiss due to deliberate
> destruction of *Brady* material, resulting in manifest injustice.
>
> III. Petitioner was denied fundamental fairness and due process, where
> the trial court refused *Brady* material to be disclosed to the defense.
>
> IV. Petitioner was denied a fundamentally fair trial and denied equal
> protection under color of the law through the Sixth and Fourteenth
> amendments.
>
> V. Petitioner was denied a fundamentally fair trial, where the court
> denied admission of *Brady* evidence, which worked to Petitioner's
> actual and substantial disadvantage, resulting in error of constitutional
> dimension.
>
> VI. Petitioner's due process rights through the Fourteenth Amendment
> were violated, which denied a fundamentally fair trial and contributed
> to a miscarriage of justice, by the questioning and closing argument of
> the prosecution.

On April 23, 2007, this Court entered an opinion and order holding the
petition for writ of habeas corpus in abeyance to allow petitioner to return to the
state courts to properly exhaust certain claims that had not been presented to the
state courts as federal constitutional claims.  The Court also administratively

closed the case. *See Batey v. Burt,* No. 2007 WL 1218705 (E.D. Mich. April 23, 2007).

Petitioner then filed a post-conviction motion for relief from judgment pursuant to M.C.R. 6.500, *et. seq.,* which was denied by the trial court. *People v. Batey,* No. 99-11109-FC (Allegan County Circuit Court, September 5, 2007). The Michigan appellate courts denied petitioner leave to appeal. *People v. Batey,* No. 280958 (Mich. Ct. App. January 11, 2008); *lv. den.* 482 Mich. 971, 755 N.W.2d 178 (2008).

On October 9, 2008, petitioner filed a motion to reopen the petition for writ of habeas corpus. In addition to seeking habeas relief on the six claims contained in his original petition, petitioner also filed an amended petition, in which he sought habeas relief on the following additional claim:

> The petitioner was denied his Fifth, Sixth, and Fourteenth constitutional Amendment rights where he was denied effective assistance of both trial and appellate counsel, when his appellate counsel did not raise the issue of ineffective assistance of trial counsel, nor did he properly raise the constitutionality of the issues which were raised on direct appeal of right.

On March 10, 2009, this Court reopened the petition for writ of habeas corpus and amended the caption to reflect that petitioner's warden at the time of the reopening of his habeas petition was Carol Howes. The Court also gave respondent sixty days to file a supplemental answer. On May 11, 2009, respondent filed a supplemental answer in this case.

Petitioner now seeks habeas relief on the seven grounds raised in his

original and amended habeas petition.

## II. Standard of Review

28 U.S.C. §2254(d) imposes the following standard of review for habeas
cases:

An application for a writ of habeas corpus on behalf of a person in
custody pursuant to the judgment of a State court shall not be
granted with respect to any claim that was adjudicated on the merits
in State court proceedings unless the adjudication of the claim–

(1)     resulted in a decision that was contrary to, or
involved an unreasonable application of, clearly
established Federal law, as determined by the
Supreme Court of the United States; or
(2)     resulted in a decision that was based on an
unreasonable determination of the facts in light of the
evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  Additionally, this Court must presume the correctness of

state court factual determinations. 28 U.S.C. § 2254(e)(1).

A decision of a state court is "contrary to" clearly established federal law if

the state court arrives at a conclusion opposite to that reached by the Supreme

Court on a question of law or if the state court decides a case differently than the

Supreme Court has on a set of materially indistinguishable facts. *Williams v.

Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable application" occurs

when "a state court decision unreasonably applies the law of [the Supreme

Court] to the facts of a prisoner's case." *Id.* at 409.  A federal habeas court may

not "issue the writ simply because that court concludes in its independent

judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

### III. Discussion

For purposes of judicial clarity, the Court will address petitioner's fourth claim and a portion of his sixth claim first, because these are the claims that the Court is conditionally granting habeas relief on.

**A. Claim # 4. The denial of the right to present a closing argument.**

In his fourth claim, petitioner argues that he was denied a fair trial and equal protection of the law when the trial court prohibited defense counsel from commenting during closing argument about sexual activity between MA and JA.[2]

Prior to trial, the trial court judge ruled that evidence of sexual activity between MA and JA could not be admitted at trial. However, the prosecutor introduced into evidence a letter that MA wrote to petitioner and petitioner's taped statement to the police, both of which referred to the sexual activity between MA and JA.

The Michigan Court of Appeals acknowledged that the trial court judge committed error by limiting the scope of defense counsel's argument:

It is well-established that, during closing argument, the attorneys may

---

[2]  Because petitioner's nephews were minors at the time of the alleged offenses, this Court will follow the Michigan Court of Appeals' practice of referring to them solely by their initials in order to preserve their privacy.

comment on the evidence and reasonable inferences arising from the evidence. Additionally, defendants have a constitutional right to present a defense, which logic dictates requires making arguments to the jury. Despite the trial court's earlier ruling, the jury actually acquired evidence referring to sexual activity between MA and JA. The reason the trial court prohibited defense counsel from commenting on this evidence was its belief that the sexual activity between the brothers had any no "ill effects." However, MA had a nervous breakdown and the prosecutor suggested to the jurors that they infer that sexual activity between Batey and MA caused the breakdown. Defense counsel should have been equally free to argue that sexual activity between MA and JA caused the breakdown. Further, there is no legal support for the trial court's rationale that, because the evidence came in "for expediency sake," it changed Batey's right to comment on the evidence. Once the evidence was admitted, defense counsel should have been permitted to make arguments concerning the evidence and the inferences the jury should draw from the evidence.
*Batey,* Slip. Op. at * 4 (footnotes omitted).

However, the Michigan Court of Appeals concluded that the trial court's error did not require reversal, because the jury was aware from the evidence that there was sexual activity between MA and JA. Defense counsel mentioned MA's letter to petitioner, in which he had been sexually assaulted by JA. The Michigan Court of Appeals concluded that although "defense counsel did not have an opportunity to frame the arguments as might have been desired, the jury was still aware of the defense theory." *Id.* at pp. 4-5.

It is well-settled that a criminal defendant has a due process right to a "meaningful opportunity to present a complete defense." *California v. Trombetta*, 467 U.S. 479, 485 (1984); *see also Chambers v. Mississippi*, 410 U.S. 284, 302 (1973) (holding that the defendant was denied the right to present a defense

8

when he was forbidden from cross-examining a key witness and not allowed to call three favorable witnesses); *See also Crane v. Kentucky,* 476 U.S. 683, 690 (1986)("whether rooted directly in the Due Process Clause of the Fourteenth Amendment, or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense'")(internal citations omitted).

Under the Sixth Amendment, a criminal defendant is entitled to the assistance of counsel, which includes the delivery of a closing argument which is considered "a basic element of the adversary factfinding process in a criminal trial." *Herring v. New York*, 422 U.S. 853, 858 (1975).  The Supreme Court observed that "[i]t has universally been held that counsel for the defense has a right to make a closing summation to the jury, no matter how strong the case for the prosecution may appear to the presiding judge." *Id.*  In *Herring*, the Supreme Court held that a trial court's refusal to allow defense counsel to present any closing argument in a bench trial violated the Sixth Amendment, on the ground that denying a defendant the opportunity to make final arguments on his theory of the defense denies him the right to the assistance of counsel. *Id.* at 862-63.

In the present case, the trial court violated petitioner's right to present a defense and his right to counsel, and relieved the prosecution of its burden to prove its case beyond a reasonable doubt, by prohibiting petitioner's counsel from arguing petitioner's theory of the defense in closing arguments, namely that

the sexual activity between JA and MA caused MA to have a nervous breakdown. *See Conde v. Henry,* 198 F. 3d 734, 739 (9th Cir. 1999). The trial court's error was compounded by the prosecutor's closing argument, in which she argued that the sexual activity between petitioner and MA caused the breakdown. *Id.*

This Court further concludes that as a result of this error, petitioner is entitled to automatic reversal of his conviction. The existence of certain structural defects in a trial requires automatic reversal of the conviction because it infects the entire trial process. *See Brecht v. Abrahamson*, 507 U.S. 619, 629-630 (1993). A court should not apply harmless error review in "cases that contain a 'defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself.'" *Neder v. United States*, 527 U.S. 1, 7 (1999)*(quoting Arizona v. Fulminante*, 499 U.S. 279, 309-10 (1991)). In *Fulminante*, the Supreme Court held that constitutional violations that are not subject to harmless error review include, the "total deprivation of the right to counsel at trial," "a judge who was not impartial," "unlawful exclusion of members of the defendant's race from a grand jury;" the right to self representation at trial, and the right to a public trial. 499 U.S. at 309-10 (internal citations omitted). Additionally, the U.S. Supreme Court has routinely found constitutional error without any specific showing of prejudice to a defendant when counsel is either totally absent, or prevented from assisting the accused during a critical stage of

10

the proceedings. *United States v. Cronic*, 466 U.S. at 659, fn.25; *United States v. Minsky*, 963 F. 2d 870, 874 (6th Cir. 1992). By precluding defense counsel from arguing about a theory of the defense, the trial court violated petitioner's right to the assistance of counsel, due process, and trial by jury on every element of the charged crime, which constitutes a structural error that requires automatic reversal of his conviction. *Conde,* 198 F. 3d at 741.

Assuming that harmless error review applies, this Court would conclude that the trial court's refusal to permit defense counsel to argue his theory to the jury was not harmless. On habeas review, the test for whether an error is harmless is whether it had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 623. When a federal court judge in a habeas proceeding is in "grave doubt" about whether a trial error of federal constitutional law had a substantial and injurious effect or influence in determining the jury's verdict, the error is not harmless and the petitioner must prevail. *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995). Only if a federal habeas court can say with certainty that a trial error had little or no impact on the judgment, should the judgment stand. *See Barker v. Yukins*, 199 F. 3d 867, 874 (6th Cir. 1999).

The primary testimony against petitioner in this case involved his two nephews, MA and JA. Testimony at trial indicated that JA was stealing money to purchase marijuana, and other drugs. JA's mother, Sandra Atwood, and her

11

live-in male companion, David Foreman, both agreed that JA was habitually untruthful. JA also falsely accused petitioner of molesting him in July of 1993, when petitioner was still living in Maryland. Foreman admitted that this false accusation was an attempt by JA to retaliate against petitioner for attempting to convince JA to stop taking illegal drugs. Evidence at trial also established that JA was a special education student with problems. JA heard voices before being placed in a mental institution. There was also evidence that JA's drug and alcohol addiction adversely affected his memory. JA had engaged in a sexual relationship with MA, who was his younger brother. JA had severely beaten MA, causing him to be hospitalized with a ruptured spleen.

With respect to the victim, MA, there was evidence that he had been seeking counseling through the Allegan County Community Mental Health Services. A counselor with the mental health services had told petitioner that she felt that MA was in an unhealthy living environment and should be removed from his abusive environment. MA's parents were apparently not happy with petitioner's attempts to help MA. In August of 1998, MA was admitted to Pine Rest, a residential institution. At about this time, MA told two witnesses that his mother and Foreman were going to "get" petitioner, that what his parents would claim was not true, and that the witnesses should not tell MA's parents what he had told them.

The entire case centered around the credibilty of these two young men.

Both MA and JA had been hospitalized for psychological problems.  MA was

diagnosed as schizophrenic and was hearing voices at the time of the trial.

There was also evidence that JA was a practicing Satanist.  There were a

number of inconsistencies in JA's testimony, particularly involving his testimony

about observing petitioner perform oral sex on MA.  Finally, there was evidence

that JA had sexually assaulted MA.  Significantly, the jury acquitted petitioner of

the charge of criminal sexual conduct involving anal penetration upon MA, which

shows that they doubted at least parts of the testimony. [3]

        The prosecutor argued in her closing statement that MA's hospitalization

was the result of petitioner's sexual assaults on MA.  In light of the fact that the

prosecutor presented this theory to the jury, in order to establish that petitioner

had sexually assaulted MA, petitioner should have been permitted to argue that

it was the sexual activity between MA and JA which caused MA's nervous

breakdown.  If the trial court had not improperly limited defense counsel's closing

argument that it was the sexual activity between JA and MA which caused the

latter's mental breakdown, the jury may very well have concluded that the

prosecution failed to prove that petitioner sexually assaulted MA. *Conde,* 198 F.

3d at 741.  Because of the limited credibility and reliability of the two main

witnesses in this case, this Court has a "grave doubt" that the error was

---

[3] This Court further notes that JA, who also goes by another name, allegedly recanted his trial
testimony subsequent to petitioner's conviction. *See* Petitioner's Appendix K.

13

harmless.  Accordingly, the Court will grant petitioner a conditional writ on his fourth claim. *Id.* at 742.

### B.  Claims # 6 and # 7.  The prosecutorial misconduct/ineffective assistance of counsel claims.

As part of his sixth claim, petitioner contends that the prosecutor engaged in prosecutorial misconduct by making repeated allusions and comments about petitioner's homosexual orientation.  Petitioner argues that trial counsel was ineffective for failing to object to this misconduct.  Petitioner also argues that his appellate counsel was ineffective for failing to raise the issue of trial counsel's ineffectiveness on his direct appeal to excuse petitioner's failure to preserve the prosecutorial misconduct issue on petitioner's direct appeal, as well as for failing to properly "federalize" his prosecutorial misconduct claim on his direct appeal. For purposes of judicial economy, this Court will address petitioner's prosecutorial misconduct claim along with his related ineffective assistance of counsel claims. *See Millender v. Adams,* 187 F. Supp. 2d 852, 874 (E.D. Mich. 2002).

Throughout trial, the prosecutor elicited testimony and made comments concerning petitioner's sexual orientation.  The prosecutor elicited testimony that petitioner "hates girls." (Tr. II, p. 62).  Over petitioner's objection, the prosecutor inquired repeatedly about petitioner's failed relationships with women, namely, an ex-wife and an ex-girlfriend. (*Id.* at pp. 65-66, Tr. III, pp. 37-39).  The

prosecutor further attempted to portray petitioner as promiscuous, by asking witnesses about petitioner's four adult male partners, two of whom had no connection with the case. (Tr. I, pp. 131-32, Tr. II, pp. 67-68). The prosecutor asked a defense witness, Steve Gilley, whether he was a homosexual and over an objection from defense counsel, questioned Gilley about his past sexual relationship with petitioner. (Tr. II, pp. 144-45). Two other defense witnesses were asked by the prosecutor on cross-examination whether they looked at gay pornography, videos, or magazines. (Tr. II, p. 199; Tr. III, p. 33). One witness was also impeached with an article, which the prosecutor took pains to point out, came from "Michigan's Community News for Lesbians, Gays, Bi-Sexuals and Transgenders and Friends." (Tr. III, pp. 45-47).

On direct appeal, the Michigan Court of Appeals reviewed petitioner's claims for plain error, because petitioner had failed to object to all but one of the alleged errors. The Michigan Court of Appeals concluded that petitioner had not demonstrated that "the prosecutor's comments were likely to have any negative effect on the jury." *Batey,* Slip. Op. at * 6. The Michigan Court of Appeals further concluded that the trial court judge took "prompt action" regarding the one objected-to error to prevent petitioner from being prejudiced. *Id.*

The Michigan Supreme Court denied petitioner leave to appeal. *People v. Batey,* 471 Mich. 882; 686 N.W. 2d 487 (2004). However, Justice Kelly, in a dissent joined by Justice Cavanagh, indicated that she would grant leave to

appeal on petitioner's prosecutorial misconduct claim:

> This case involved a charge of criminal sexual conduct by an adult male against a teenaged boy. At trial, the prosecutor allegedly made numerous allusions to defendant's sexual orientation, including references to his consensual relationships with adult male partners.

> Defense counsel failed to object. Normally, this failure precludes appellate review because the trial court is not provided with the opportunity to cure any error. However, "[a]n exception exists if a curative instruction could not have eliminated the prejudicial effect or where failure to consider the issue would result in a miscarriage of justice."

> In my opinion, this case satisfies the exception. Defendant was accused of sexually assaulting his teenaged nephew. During the trial, the prosecutor allegedly questioned defendant about his failed relationships with women. He asked defense witnesses if they viewed gay pornography videos or magazines, and questioned them about their sexual orientation.

> None of the questions bears any relevance to whether defendant sexually assaulted the victim. Instead, it appears that, in posing them, the prosecutor sought to secure a conviction by playing to societal stereotypes regarding gay men. Furthermore, the prosecutor's questions seem to suggest that the witnesses' sexual orientation affected their truthfulness. This Court long ago held that a witness's "sexual propensities or preferences do not bear on his character for truthfulness or untruthfulness." The references to the sexual orientation of defendant and witnesses for the defense were pervasive and extensive.

> Even if defense counsel had objected, the damage had already been done. These are not the only improper statements that the prosecutor allegedly made, but they are the most disturbing. The Court of Appeals stated that "Batey has not demonstrated that the prosecutor's comments were likely to have had any negative effect on the jury." Given the prevalent stereotypes surrounding homosexuality, defendant has clearly shown that the comments were likely to have a negative effect on the jury. The real question is whether the pervasive comments were outcome-determinative.

I would grant leave to appeal to consider these issues.

*People v. Batey,* 471 Mich. at 882 (Kelly, J., with Cavanagh, J., dissenting)(internal citations and quotations omitted).

Petitioner raised this prosecutorial misconduct claim in his original habeas action. This Court found that petitioner's prosecutorial misconduct claim, along with several other prosecutorial misconduct claims, was not fairly presented to the state courts as federal constitutional claims, because petitioner did not cite to any federal cases or constitutional provisions in support of his prosecutorial misconduct claims. *See Batey v. Burt,* No.2007 WL 1218705, Slip. Op. at * 3. However, this Court also noted that although a federal court has the power to adjudicate an unexhausted habeas claim, " this Court declines to do so in this case, because petitioner's claims may have merit. Petitioner's prosecutorial misconduct claims, in particular, are particularly disturbing, as noted by Justice Marilyn J. Kelly in her dissenting opinion." *Id.* at * 4. The petition was held in abeyance for petitioner to return to the state courts to properly exhaust these claims. *Id.*

Petitioner then filed a post-conviction motion for relief from judgment with the state court. Petitioner raised the prosecutorial misconduct claims as a federal constitutional claim and also raised a claim that trial counsel was ineffective for failing to object to the prosecutorial misconduct and that appellate counsel was ineffective for failing to raise the ineffective assistance of trial counsel claim on direct appeal and for failing to properly raise the

constitutionality of the issues that he had raised on the direct appeal. [4]

The trial court denied petitioner's motion for relief from judgment, finding that petitioner was not entitled to an evidentiary hearing on his ineffective assistance of counsel claims pursuant to M.C.R. 6.504(B). The trial court concluded, that trial counsel was not ineffective for failing to object to the statements made by the prosecutor, even going so far as to state that "it is inaccurate to conclude that all of these statements can be classified as prosecutorial misconduct." *People v. Batey,* No. 99-11109-FC, Slip. Op. at * 4. The trial court indicated that the questions about the partners that petitioner lived with was not misconduct because "everyone knew that Defendant was gay-this became known during voir dire." The court further concluded that these questions did not imply promiscuity, but only "serial monogamy." *Id.*

The Michigan appellate courts denied petitioner's post-conviction appeal pursuant to M.C.R. 6.508(D).

Respondent initially contends that petitioner's prosecutorial misconduct claims are procedurally defaulted, because he failed to object to the prosecutor's remarks at trial. When the state courts clearly and expressly rely on a valid state procedural bar, federal habeas review is also barred unless petitioner can

---

[4] *See* Memorandum of Law in Support of Motion for Relief From Judgment, filed with the Allegan County Circuit Court [this Court's Dkt. # 36-2]; Application for Leave to Appeal the Denial of the Motion for Relief From Judgment, filed with the Michigan Court of Appeals [this Court's Dkt. # 40-1]; Application for Leave to Appeal to the Michigan Supreme Court [this Court's Dkt. # 40-2].

demonstrate "cause" for the default and actual prejudice as a result of the alleged constitutional violation, or can demonstrate that failure to consider the claim will result in a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991).

As mentioned above, petitioner alleges that trial counsel was ineffective for failing to object to this alleged misconduct. Ineffective assistance of counsel may be cause for procedural default. *Murray v. Carrier*, 477 U.S. 477, 488 (1986). However, an ineffective assistance of counsel claim that is asserted as cause to excuse another procedurally defaulted claim can itself be procedurally defaulted, and unless a habeas petitioner can satisfy the cause and prejudice standard for the procedurally defaulted ineffective assistance of counsel claim, that claim cannot serve as cause for another procedurally defaulted claim. *Edwards v. Carpenter,* 529 U.S. 446, 450-453 (2000).

Respondent in her supplemental answer contends that petitioner's ineffective assistance of trial counsel claim is procedurally defaulted because petitioner raised the claim for the first time on post-conviction review and failed to show cause and prejudice, as required by M.C.R. 6.508(D)(3), for failing to raise this claim on his appeal of right.

Petitioner claims that his appellate counsel was ineffective for failing to raise an ineffective assistance of trial counsel claim on his appeal of right and for failing to properly raise the prosecutorial misconduct claim as a federal

constitutional claim on direct review.  If petitioner could show that he received

ineffective assistance of appellate counsel that rose to the level of a Sixth

Amendment violation, it would excuse his procedural default for failing to raise

his ineffective assistance of trial counsel claim on his direct appeal in the state

courts, as well as his failure to federalize his prosecutorial misconduct claim on

direct review. *See Seymour v. Walker*, 224 F. 3d 542, 550 (6th Cir. 2000).

Additionally, petitioner could not have procedurally defaulted his ineffective

assistance of appellate counsel claim, because state post-conviction review was

the first opportunity that he had to raise this claim. *See Hicks v. Straub*, 377 F.

3d 538, 558, n. 17 (6th Cir. 2004); *Johnson v. Warren,* 344 F. Supp. 2d 1801,

1089, n. 1 (E.D. Mich. 2004).  Given that the cause and prejudice inquiry for the

procedural default issue merges with an analysis of the merits of petitioner's

defaulted claims, the Court must consider the merits of these claims. *See

Cameron v. Birkett,* 348 F. Supp. 2d 825, 836 (E.D. Mich. 2004).

The United States Supreme Court has stated that prosecutors must

"refrain from improper methods calculated to produce a wrongful conviction."

*Berger v. United States*, 295 U.S. 78, 88 (1935).  When a petitioner seeking

habeas relief makes a claim of prosecutorial misconduct, the reviewing court

must consider that the touchstone of due process is the fairness of the trial, not

the culpability of the prosecutor.  On habeas review, a court's role is to

determine whether the conduct was so egregious as to render the entire trial

fundamentally unfair. *Serra v. Michigan Department of Corrections*, 4 F. 3d 1348, 1355-1356 (6th Cir. 1993). When analyzing a claim of prosecutorial misconduct, a court must initially decide whether the challenged statements were improper. *Boyle v. Million*, 201 F. 3d 711, 717 (6th Cir. 2000). If the conduct is improper, the district court must then examine whether the statements or remarks are so flagrant as to constitute a denial of due process and warrant granting a writ. *Id.* In evaluating prosecutorial misconduct in a habeas case, consideration should be given to the degree to which the challenged remarks had a tendency to mislead the jury and to prejudice the accused, whether they were isolated or extensive, whether they were deliberately or accidentally placed before the jury, and, except in the sentencing phase of a capital murder case, the strength of the competent proof against the accused. *Serra,* 4 F. 3d at 1355-56; *See also Simpson v. Warren,* 662 F. Supp. 2d 835, 853 (E.D. Mich. 2009).

A criminal defendant's 'bad character' cannot be used to argue that the defendant committed the crime for which he is being tried, or had the propensity to commit that crime. *See Washington v. Hofbauer,* 228 F. 3d 689, 699 (6th Cir. 2000). When a prosecutor dwells on a defendant's bad character in an attempt to argue that the defendant committed the charged crime, or had the propensity to commit that crime, a federal court may find prosecutorial misconduct. *Id; See also Cristini v. McKee,* 526 F. 3d 888, 899 (6th Cir. 2008); *Hodge v. Hurley,* 426 F. 3d 368, 384 (6th Cir. 2005)(finding that the prosecutor engaged in misconduct

by inappropriately emphasizing petitioner's bad character, which was in no way related to the crime charged).

In the present case, contrary to the findings of the trial court and the Michigan Court of Appeals, the prosecutor engaged in repeated and flagrant allusions to petitioner's homosexual orientation and practices, as well as the sexual orientation of some of his witnesses.  This evidence was inflammatory and extremely prejudicial to petitioner. *See United States v. Gillespie*, 852 F. 2d 475, 479 (9th Cir. 1988)("[e]vidence of homosexuality is extremely prejudicial"); *see also People of Territory of Guam v. Shymanovitz*, 157 F.3d 1154, 1161 (9th Cir. 1998)(finding that the introduction of sexually explicit gay adult magazines was highly prejudicial evidence in a case involving the sexual abuse of minors, and should not have been admitted).  A number of cases have held that it is reversible error for the prosecutor to comment upon a defendant's homosexual orientation, particularly when it has no relevance to the prosecution. *See U.S. v. Birrell,* 421 F. 2d 665, 666 (9th Cir. 1970)(It was reversible error for government counsel to state in closing argument to jury that defendant should not be turned loose on society because of defendant's homosexual proclivities); *See also Jones v. U.S.,* 625 A. 2d 281, 288 (D.C. 1993)(trial court abused its discretion in allowing excessive evidence and argument pertaining to defendants' homosexual relationship and one defendant's effeminate characteristics; although defendant's feminine manner of walking after assault was relevant to

identity and testimony that defendants lived together was relevant to issue of

aiding and abetting, remainder of such evidence, which included 37 references

elicited from eyewitnesses and 31 references in government's closing and

rebuttal arguments, was prosecutorial overkill and plainly prejudicial); *U.S. ex rel.*

*Alerte v. Lane,* 725 F. Supp. 936, 942 (N.D. Ill. 1989)(petitioner deprived of a fair

trial by prosecutor's improper closing argument that murder was motivated by

homosexual jealousy where there was no evidence to support such a theory; the

prosecutor's purpose in implying a homosexual motive could "only be construed

as outside the record and intentionally inflammatory.").

Numerous state cases have held that homosexual orientation is totally

irrelevant in establishing that a defendant sexually assaulted children. *See State*

*v. Ellis*, 820 S.W.2d 699, 702 (Mo.App. 1991)("It is no more reasonable to

assume that a preference for same gender adult sexual partners establishes a

proclivity for sexual gratification with same gender children than it is to assume

that preference for opposite gender adult sexual partners establishes a proclivity

for sexual gratification with opposite gender children."); *See also State v. Crotts*,

104 Ohio St. 3d 432, 434; 820 N.E.2d 302 (Ohio 2004)("evidence of

homosexuality is not relevant to establish pedophilia," concluding that the

"existence or absence of [homosexuality] neither establishes nor disproves

[pedophilia.]"); *State v. Bates*, 507 N.W. 2d 847, 850, 852 (Minn.App.1993)("The

belief that homosexuals are attracted to prepubescent children is a baseless

stereotype.").

In this case, given the prejudicial nature of evidence of homosexuality, the prosecutor's continual questions and comments about petitioner's sexual orientation and practices were "analogous to prosecutorial appeals to passion, prejudice, and fear." *State v. Blomquist*, 39 Kan. App.2d 101, 111; 178 P.3d 42 (Kan. App. 2008). In light of the irrelevance of petitioner's sexual orientation to the prosecution at hand, the prosecutor's purpose in repeatedly bringing up petitioner's homosexuality can only be viewed as being "intentionally inflammatory." *U.S. ex rel. Alerte v. Lane,* 725 F. Supp. at 942. Simply put, there is no way to view the prosecutor's flagrant references to petitioner's sexual orientation as being anything other than "prosecutorial overkill." *Jones v. U.S.,* 625 A. 2d at 288.

The question for this Court is whether the prosecutorial misconduct in this case was so flagrant so as to justify habeas relief. In *Boyle v. Million,* 201 F. 3d at 717, the Sixth Circuit held that habeas relief was warranted on a habeas petitioner's prosecutorial misconduct claim, despite the relatively strong evidence against the petitioner, in light of the fact that the prosecutor's misconduct was flagrant, was intended to mislead and prejudice the jury, and the improprieties infected all aspects of the trial, such that the error could not be deemed harmless. In light of "the egregious and inflammatory nature" of the behavior and arguments of the prosecutor throughout trial, the Sixth Circuit was

left with "grave doubt" as to whether the prosecutorial errors had a substantial and injurious effect or influence in determining the jury's verdict. *Id.* at 718.

This Court is in grave doubt about whether the prosecutorial misconduct in this case had a substantial and injurious effect or influence in determining the jury's verdict. First, the prosecutor's misconduct was flagrant and severe and pervaded the entire trial proceedings and was designed to prejudice the jurors against petitioner. *Simpson,* 662 F. Supp. 2d at 854. This is particularly so, in light of the fact that the prosecutor's questions, comments, and arguments were "[p]art of the prosecutor's continuous effort to have the jury determine credibility based on improper considerations," such as improper character assessments of petitioner and his witnesses. *Washington,* 228 F. 3d at 709.

As mentioned when discussing petitioner's fourth claim, *supra,* the two main witnesses against petitioner had serious credibility problems. On the other hand, several of petitioner's friends testified on his behalf, either to impeach the credibility of MA and JA or to provide alibi testimony. In light of the competing evidence in this case, this Court has grave doubt about whether the pervasive prosecutorial misconduct in this case was harmless. *Barker,* 199 F. 3d at 874. In order for this Court to find the misconduct here to be harmless, it would have to believe only the prosecution's evidence but discredit the defense evidence in this case. *Barker,* 199 F. 3d at 874. However, it is neither the proper role for a state appellate court, nor for this Court, "[t]o stand in the place of the jury, weighing

25

competing evidence and deciding that some evidence is more believable than others." *Id.* at 874-75. Rather, it is for the jury to make that determination, unhindered by any egregious prosecutorial misconduct in this case.

This Court concludes that the prosecutorial misconduct in this case was pervasive and deprived petitioner of a fair trial. "[I]n a close credibility contest such as this, with horrible acts alleged but scant hard evidence for the jury to weigh, a prosecutor must be doubly careful to stay within the bounds of proper conduct." *Washington,* 228 F. 3d at 709. "Given the prosecutor's deliberate and repeated 'foul blows' this Court has 'grave doubt' that such errors did not have a 'substantial and injurious effect or influence in determining the jury's verdict.'" *Simpson,* 662 F. Supp. 2d at 855.

This Court finds that the state courts' decisions to reject petitioner's prosecutorial misconduct claim regarding the prosecutor's flagrant questions and comments about petitioner's sexual orientation involved an unreasonable application of clearly established federal law. *Simpson,* 662 F. Supp. 2d at 853. In addition, Justice Kelly's sharp dissent in this case, which was joined by Justice Cavanagh, offers a compelling and persuasive argument that the majority's conclusion was unreasonable, justifying habeas relief for petitioner. *See Rockwell v. Yukins,* 341 F. 3d 507, 516-17 (6th Cir. 2003)(Clay, J., dissenting).

The Court further concludes that petitioner's failure to object to the

majority of these prosecutorial questions and remarks is excused by trial counsel's failure to object. The Sixth Amendment guarantees the accused in a criminal prosecution the right to the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* sets forth a two-part test for assessing claims of ineffective assistance. First, did the attorney make errors "so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment," 466 U.S. at 687. To establish deficient performance under this prong of *Strickland*, the defendant must show that his attorney's representation "fell below an objective standard of reasonableness." *Id.*, at 688. The second prong of *Strickland* examines whether the defendant was prejudiced by counsel's deficient performance. To meet the prejudice standard, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. This Court further notes that "[T]he prejudice question, for purposes of an ineffective assistance of counsel claim, 'is essentially the same inquiry as made in a harmless-error analysis.'" *Johnson v. Renico,* 314 F. Supp. 2d 700, 711 (E.D. Mich. 2004)(internal quotation omitted).

In assessing whether a claim of ineffective assistance satisfies the "cause" requirement of *Coleman*, a less stringent standard of review is applied than when reviewing an independent freestanding ineffective assistance of counsel

claim pursuant to the deferential standard of review found in 28 U.S.C. § 2254(d). The question for the federal habeas court is not whether the state court's decision was unreasonable, but whether there was there an independent Sixth Amendment violation under *Strickland*. Stated differently, the level of scrutiny is the same as would be applied on direct review. *See Joseph v. Coyle*, 469 F.3d 441, 459 (6th Cir. 2006).

In light of the fact that the prosecutor's allusions to petitioner's sexual orientation were so flagrant and prejudicial, this Court concludes that trial counsel was ineffective for failing to object to these remarks and that this failure to object excuses the procedural default of the prosecutorial misconduct claim. *See Washington,* 228 F. 3d at 704-05; 708; *Gravley v. Mills,* 87 F.3d 779, 785-86 (6th Cir. 1996); *See also Dittrich v. Woods,* 602 F. Supp. 2d 802, 808 (E.D. Mich. 2009)(Failure of defense counsel to object to "other act evidence" that defendant beat his wife and children denied defendant his Sixth Amendment right to effective assistance of counsel; the domestic violence evidence was far more prejudicial than probative, the only purpose of the evidence served was to portray defendant as a man of bad character predisposed to do bad deeds, and since case essentially boiled down to a credibility contest between the complainant and defendant, counsel's failure to object to the domestic violence evidence prejudiced defendant).

Because petitioner's ineffective assistance of trial counsel claim was

meritorious, appellate counsel was ineffective for failing to raise this claim on petitioner's direct appeal, so as to provide petitioner cause and prejudice for failing to raise his ineffective assistance of trial counsel claim on direct appeal. *See McFarland v. Yukins,* 356 F. 3d 688, 712 (6th Cir. 2004).

Finally, it is unclear whether the prosecutorial misconduct claim was defaulted pursuant to M.C.R. 6.508(D)(3), on the ground that it was presented only as a federal constitutional claim for the first time on direct appeal. [5] Assuming that the prosecutorial misconduct claim was defaulted on this basis, appellate counsel's failure to federalize the issue on direct appeal amounted to the ineffective assistance of appellate counsel, particularly where counsel should have known that petitioner would most likely seek federal habeas review if he could not obtain relief in the state appellate courts. *See Jamison v. Collins,* 100 F. Supp. 2d 647, 741 (S.D. Ohio 2000). Any default on this basis would be

---

[5] The trial court denied petitioner's post-conviction motion without invoking any of the provisions of M.C.R. 6.508(D). The Michigan Court of Appeals and the Michigan Supreme Court denied petitioner's post-conviction appeals by form order pursuant to M.C.R. 6.508(D), without specifying which subsection they were denying petitioner's claims under. It is unclear whether these courts denied petitioner relief on his prosecutorial misconduct claim pursuant to M.C.R. 6.508(D)(3), because he failed to raise it as a federal claim on his direct appeal, or whether they denied him relief on this claim pursuant to M.C.R. 6.508(D)(2), because petitioner had previously raised his prosecutorial misconduct claim on his direct appeal. MCR 6.508(D)(2) indicates that a court in Michigan should not grant post-conviction relief if the post-conviction motion "alleges grounds for relief which were decided against the defendant in a prior appeal or proceeding under this subchapter, unless the defendant establishes that a retroactive change in the law has undermined the prior decision[;]" 6.508(D)(2) is a rule of *res judicata* which bars a defendant from re-litigating claims in a post-conviction motion which have already been adversely decided against him or her. To the extent that the state appellate courts relied on 6.508(D)(2) to deny petitioner post-conviction relief on his prosecutorial misconduct claim, their reliance on M.C.R. 6.508(D) based on *res judicata* does not bar habeas review of petitioner's claim on the merits. *See Hicks v. Straub,* 377 F. 3d 538, 558, n. 17 (6th Cir. 2004); *See also Skinner v. McLemore,* 551 F. Supp. 2d 627, 640-41 (E.D. Mich. 2008).

excused by appellate counsel's failure to federalize petitioner's prosecutorial misconduct claim on his appeal of right.

Accordingly, the Court will grant a conditional writ of habeas corpus on petitioner's prosecutorial misconduct and related ineffective assistance of counsel claims.

This Court's conclusion that petitioner is entitled to habeas relief on his fourth claim and a portion of his sixth claim is dispositive of the petition, the Court considers it unnecessary to review petitioner's other claims and declines to do so. *See Satterlee v. Wolfenbarger,* 374 F. Supp. 2d 562, 567 (E.D. Mich. 2005); *See also Haynes v. Burke,* 115 F. Supp. 2d 813, 819-20 (E.D. Mich. 2000).

## IV. ORDER

**IT IS HEREBY ORDERED THAT PETITIONER'S APPLICATION FOR WRIT OF HABEAS CORPUS IS CONDITIONALLY GRANTED. UNLESS THE STATE TAKES ACTION TO AFFORD PETITIONER A NEW TRIAL WITHIN NINETY (90) DAYS OF THE DATE OF THIS OPINION, PETITIONER MAY APPLY FOR A WRIT ORDERING RESPONDENT TO RELEASE HIM FROM CUSTODY FORTHWITH.**

S/Denise Page Hood
Denise Page Hood
United States District Judge

Dated:  June 30, 2010

I hereby certify that a copy of the foregoing document was served upon Michael D. Batey, Reg. No. 293707, Southern Michigan Correctional Facility, 4010 Cooper St., Jackson, MI 49201 and  counsel of record on June 30, 2010, by electronic and/or ordinary mail.

S/William F. Lewis
Case Manager