**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

MICHAEL DENNIS BATEY,

      Petitioner,

v.

                          CASE NO. 05-CV-73699-DT
                          HONORABLE DENISE PAGE HOOD
                          UNITED STATES DISTRICT JUDGE

RANDALL HAAS,

      Respondent.

_____/

## OPINION AND ORDER ON REMAND DENYING THE PETITION FOR WRIT OF HABEAS CORPUS, DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND GRANTING LEAVE TO APPEAL IN FORMA PAUPERIS

      This matter is on remand from the United States Court of Appeals for the

Sixth Circuit.  Michael Dennis Batey, ("Petitioner"), presently confined at the

Parnall  Correctional Facility in Jackson, Michigan, has filed a petition for writ of

habeas corpus pursuant to 28 U.S.C. § 2254.  In his habeas petition, filed both

*pro se* and through his attorneys Jonathan D. Hacker and Anton Metlitsky,

petitioner challenges his conviction for first-degree criminal sexual conduct,

M.C.L.A. 750.520b.   For the reasons stated below, the petition for writ of habeas

corpus on remand is DENIED.

## I.  Introduction

      Petitioner was convicted of the above offense following a jury trial in the

Allegan County Circuit Court.  Petitioner was acquitted of a second count of

1

criminal sexual conduct. This Court recites verbatim the relevant facts relied

upon by the Michigan Court of Appeals, which are presumed correct on habeas

review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410,

413 (6th Cir. 2009):

> A jury convicted defendant Michael Batey of first-degree criminal sexual
> conduct (CSC I) for engaging in oral sex with his nephew, MA. The trial
> court sentenced Batey to fifteen to forty-five years' imprisonment. He
> appeals as of right. We affirm.

> ### I. Basic Facts And Procedural History

> According to MA, Batey began to abuse him sexually was when he was
> fourteen or fifteen years old. On that first occasion, MA said, he and
> Batey were in the field behind Batey's house picking berries in the
> bushes while MA's brother, JA, was at the house. Batey reportedly
> asked if he could see MA's penis. MA first said no, but after Batey
> persisted, he said yes. MA claimed that he saw then that Batey had his
> penis out of his pants, JA was standing there, and Batey started to
> masturbate in front of him. The next day, MA said, Batey told him that
> he wanted to fellate him. MA initially said no, but eventually relented
> after Batey reassured him that this sort of behavior between uncles and
> nephews was normal. After Batey performed fellatio on MA, he asked
> MA if MA would perform the same act on him. MA again resisted the
> idea, but finally agreed to perform the act after additional persuasion
> from Batey. MA testified that this type of sexual activity went on every
> time he went over to Batey's house for about a year, and that he had
> oral sex with Batey approximately twenty-five times.

> After the prosecutor charged Batey with CSC I and the case went to
> trial, JA testified that he started drinking when he was about thirteen
> and that Batey gave him alcohol every time he went to Batey's house.
> "He would get me all plastered and I'd wake up and my pants would be
> down, you know, it was scary." JA stated that Batey gave him
> cigarettes and money and told him, "don't tell anybody." JA said that
> he would protest this conduct sometimes, when he was not drunk, but
> then he would finally accede to it. As JA said, "I was heterosexual and
> I was getting confused ... thought I was gay ... confused, say I'm gay,

then change my mind and say I'm not gay." JA claimed that Batey manipulated him, he had "mind play over me." JA also said that he had oral sex with Batey so many times that he could not recall the exact number of instances. He also claimed to have had anal sex with Batey several times.

JA also recalled seeing Batey molest MA. For instance, JA recalled one occasion when he was standing in front of the doorway at Batey's house, he could see into the bedroom when Batey was performing oral sex on MA. JA said that he became confused and did not know whether to tell anyone, nor did he know if anyone would believe him. According to JA, the next month he asked MA what he would say to their mother if JA told her what he saw. When MA was admitted to Pine Rest, a residential rehabilitation program, JA told his parents that he knew why MA had a nervous breakdown. When they asked him why, "I told them everything, I just opened up." He told them about "[a]ll the sexual molestation, everything with me and [MA] and Mike [Batey]."

Robin Zollar, a psychotherapist who specializes in sexual assault and sexual abuse, also testified for the prosecution at trial. She said that child victims of sexual assault normally do not tell anyone immediately. According to Zollar, there is "delay in disclosure" because of embarrassment, pressure, secrecy or coercion. In her view, it was not uncommon to find mental health problems in children who are victims of sexual abuse because of the betrayal of trust. Nor would she find it strange if a child victim recanted any accusations of molestation, denying that it occurred.

Several of Batey's friends and former lovers testified on his behalf, either to impeach the credibility of MA and JA or to provide alibi testimony. Batey did not testify. [1]

*People v. Batey,* No. 227117, * 1-2 (Mich.Ct.App. August 27, 2002).

Petitioner's conviction was affirmed on appeal. *Id., vacated in part,* 469 Mich.

900; 668 N.W. 2d 628 (2003)(Kelly, J. would remand for consideration of defendant's

---

[1]  Because the victims were minors at the time of the offenses, this Court will follow the Michigan Court of Appeals' practice of referring to them only by their initials.

allegations of prosecutorial misconduct). On remand, the conviction was again affirmed. *People v. Batey,* (On Remand) No. 227117 (Mich.Ct.App. December 30, 2003); *lv. den.* 471 Mich. 882; 686 N.W. 2d 487 (2004)(Kelly, J., with Cavanagh, J., dissenting).

Petitioner then filed a petition for writ of habeas corpus with this Court, in which he sought habeas relief on the following grounds:

> I. The Petitioner was denied a fundamentally fair trial, where his Sixth and Fourteenth amendment rights were violated, when a juror decided not to disclose information about her relationship with a prosecution witness, the father figure of the complaint, during *voir dire*.

> II. Petitioner's Sixth and Fourteenth Amendment rights were violated, where the trial court denied motions to dismiss due to deliberate destruction of *Brady* material, resulting in manifest injustice.

> III. Petitioner was denied fundamental fairness and due process, where the trial court refused *Brady* material to be disclosed to the defense.

> IV. Petitioner was denied a fundamentally fair trial and denied equal protection under color of the law through the Sixth and Fourteenth amendments.

> V. Petitioner was denied a fundamentally fair trial, where the court denied admission of *Brady* evidence, which worked to Petitioner's actual and substantial disadvantage, resulting in error of constitutional dimension.

> VI. Petitioner's due process rights through the Fourteenth Amendment were violated, which denied a fundamentally fair trial and contributed to a miscarriage of justice, by the questioning and closing argument of the prosecution.

On April 23, 2007, this Court entered an opinion and order holding the petition for writ of habeas corpus in abeyance to allow petitioner to return to the

4

state courts to properly exhaust certain claims that had not been presented to the state courts as federal constitutional claims.  The Court also administratively closed the case. *See Batey v. Burt,* No. 05-CV-73699; 2007 WL 1218705 (E.D. Mich. April 23, 2007).

Petitioner subsequently filed a post-conviction motion for relief from judgment pursuant to M.C.R. 6.500, *et. seq.,* which was denied by the trial court. *People v. Batey,* No. 99-11109-FC (Allegan County Circuit Court, September 5, 2007).  The Michigan appellate courts denied petitioner leave to appeal. *People v. Batey,* No. 280958 (Mich. Ct. App. January 11, 2008); *lv. den.* 482 Mich. 971, 755 N.W.2d 178 (2008).

On October 9, 2008, petitioner filed a motion to reopen the petition for writ of habeas corpus.  In addition to seeking habeas relief on the six claims contained in his original petition, petitioner also filed an amended petition, in which he sought habeas relief on the following additional claim, which this Court will designate as his seventh claim:

> VII.   The petitioner was denied his Fifth, Sixth, and Fourteenth constitutional Amendment rights where he was denied effective assistance of both trial and appellate counsel, when his appellate counsel did not raise the issue of ineffective assistance of trial counsel, nor did he properly raise the constitutionality of the issues which were raised on direct appeal of right.

On March 10, 2009, this Court reopened the petition for writ of habeas corpus and amended the caption to reflect that petitioner's warden at the time of

5

the reopening of his habeas petition was Carol Howes.  The Court also gave respondent sixty days to file a supplemental answer.  On May 11, 2009, respondent filed a supplemental answer in this case.

On June 30, 2010, this Court granted the petition for writ of habeas corpus, finding that petitioner had been deprived of the right to present a closing argument when the state trial court prohibited defense counsel from commenting during closing argument about the sexual activity between the minor victims, that petitioner had been denied a fair trial where the prosecutor committed misconduct by making repeated comments and references to petitioner's homosexual orientation, and that trial counsel had been ineffective for failing to object to the prosecutor's misconduct and that appellate counsel was ineffective for failing to raise the issue of trial counsel's ineffectiveness on petitioner's appeal of right. *Batey v. Burt,* No. 05-CV-73699; 2010 WL 2650019 (E.D. Mich. June 30, 2010). Because the Court granted petitioner relief on these claims, the Court declined to address petitioner's remaining claims. *Id.*

The United States Court of Appeals for the Sixth Circuit subsequently reversed this Court's decision to grant petitioner habeas relief and remanded the matter to this Court for consideration of petitioner's remaining claims. *See Batey v. Scutt,* 460 Fed. Appx. 530 (6th Cir. 2012).

On May 17, 2012, this Court reopened the petition for writ of habeas corpus to the Court's original docket and permitted petitioner's counsel to file a

6

supplemental brief in support of the petition for writ of habeas corpus on remand.

In his supplemental brief, petitioner raises the following issue, which appears to

be a supplement to petitioner's fourth claim:

> The Trial Court Violated Batey's Clearly Established Right To Confront Witnesses Against Him By Precluding Cross-Examination Based On Evidence Concerning Jason's Sexual Abuse of Matthew.

Respondent has since filed a supplemental answer and petitioner's counsel

have filed a reply brief.

In his original and amended petitions, petitioner seeks habeas relief on the

remaining claims that were not adjudicated when the Court granted petitioner

habeas relief on his two claims.

## II. Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death

Penalty Act of 1996 (AEDPA), imposes the following standard of review for

habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> > (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

7

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court has explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,'and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010)((quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002)(*per curiam*)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The

8

Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.*

"[I]f this standard is difficult to meet, that is because it was meant to be." *Harrington,* 131 S. Ct. at 786. Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. *Id.* Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (citing *Jackson v. Virginia,* 443 U.S. 307, 332, n. 5 (1979))(Stevens, J., concurring in judgment)). A "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." *Woodford,* 537 U.S. at 24. Therefore, in order to obtain habeas relief in federal

9

court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington,* 131 S. Ct. at 786-87.  Finally, in reviewing petitioner's claims, this Court must remember that under the federal constitution, petitioner was "entitled to a fair trial but not a perfect one." *Lutwak v. United States,* 344 U.S. 604, 619 (1953).

### III.  Discussion

### A.  The procedural default issue.

Respondent argues that several of petitioner's claims or subclaims are procedurally defaulted either because petitioner failed to object to the error at trial, failed to raise the issue on direct appeal, or failed to exhaust the claim before the state courts and no longer has a remedy with which to exhaust these claims.

Petitioner and his counsel have argued that several of these claims are not procedurally defaulted or that any default should be excused due to the ineffective assistance of trial or appellate counsel.

Procedural default is not a jurisdictional bar to review of a habeas petition the merits. *See Trest v. Cain*, 522 U.S. 87, 89 (1997).  Additionally, "[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F. 3d 212, 215 (6th

10

Cir.2003)(citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)).  "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525.  In the present case, this Court believes that application of a procedural bar would not affect the outcome of this case, and the Court deems it more efficient in this case to proceed directly to the merits.

**B. Claim # 1.  The juror misconduct claim**.

Petitioner first claims that he was deprived of a fair trial because one of the jurors failed to reveal during *voir dire* that she knew the victims's stepfather, David Foreman.

During jury selection, the prospective jurors were told that David Foreman would be a potential witness. (Tr. 5/17/1999, p. 11).  Phyllis McCracken was later called to sit as a juror.  She was asked whether she knew any of the witnesses, to which she responded that she did not. (*Id.,* pp. 54-55). Subsequent to the trial, the local newspaper reported that Ms. McCracken at trial realized that she knew Mr. Foreman but did not say anything to the judge.

A post-trial evidentiary hearing was conducted on petitioner's claim.  Ms. McCracken testified that she knew the Foreman family because Foreman's father owned a pool hall in Fennville when her family owned a nearby hotel. McCracken indicated that she had not seen David Foreman in 30 years.  In fact,

11

McCracken stated: "I can't say that I know David Foreman." (Tr. 4/10/00, pp. 15-18).  McCracken testified that David Foreman had broken into her house some thirty years ago.  McCracken, in fact, indicated that the only reason that she remembered Foreman was because he had burglarized her home and emphasized that she could not even pick him out of a crowd.  McCracken indicated that she and her family were upset by the break-in.  McCracken testified that she had no other contact with Foreman. (*Id.,* pp. 19-20).  McCracken acknowledged that her prior contact with Foreman "might have" influenced how she decided the case "but I don't think it did."  McCracken testified that she "tried very hard" not to let her prior association with Foreman effect her decision. (*Id.,* pp. 20-21).  McCracken was aware that Foreman and her son had gone to high school together but insisted that they were not social friends. (*Id.,* pp. 21-22).  McCracken later admitted that Foreman's sister had continued to patronize her family's hotel.  McCracken further admitted that about a year and a half prior to the trial, she had sent a card and money to the Foreman family for the funeral of Foreman's mother. (*Id.,* pp. 25, 34).

The trial judge rejected petitioner's motion for a new trial.  The judge found as a matter of fact that Ms. McCracken had her contact with David Foreman 30 or 40 years ago when he broke into her home but had "little or no contact since that time." (*Id.,* p. 78).  The judge further noted that Ms. McCracken did not "disclose her knowledge with the other jurors, it wasn't discussed with them, that

12

as best she can determine she was fair and impartial in this case, and that she

didn't believe her prior contact with Mr. Foreman influenced her decision." (*Id.,* p.

79).  Lastly, the judge noted that defense counsel had called David Foreman as

a witness at trial "to discredit [him] and to make the jury believe that Foreman

somehow manufactured this charge against Mr. Batey and influenced the

children."  In light of Ms. McCracken's negative experience with Foreman, the

judge believed that it was unlikely that defense counsel would have exercised a

peremptory challenge to remove her from the jury. (*Id.*, p. 80).  Defense counsel,

in fact, had testified at the hearing that "[i]f the juror had a negative relationship

with Mr. Foreman then it might be more likely that I want them as a juror." (*Id.,* p.

40).

The Michigan Court of Appeals rejected petitioner's claim on his direct

appeal:

> Furthermore, the trial court did not abuse its discretion in its
> substantive decision to deny Batey's motion for a new trial.  The juror
> testified that she recognized the witness as someone she knew from
> her town several years earlier, but that they were never friends.  The
> juror stated that the relationship was never disclosed during
> deliberations, and she did not believe that it had any affect on her
> decision.  The record, including this testimony, failed to demonstrate
> that Batey suffered actual prejudice or that the juror would have been
> excusable for cause had the information been disclosed during voir
> dire.  Therefore, Batey was not entitled to a new trial on this ground.

*Batey,* No. 227117, Slip. Op. at * 3.

Petitioner initially contends that he was deprived of the right to a fair

13

hearing on his tainted juror claim because the judge did not allow his appellate counsel to cross-examine Ms. McCracken or the other witnesses, choosing instead to question the witnesses himself.

Petitioner is not entitled to habeas relief on this portion of his claim.  The Supreme Court has referred to a defendant's Confrontation Clause right to be present as being a "trial right." *See Pennsylvania v. Ritchie,* 480 U.S. 39, 52 (1987)("The opinions of this Court show that the right to confrontation is a *trial* right, designed to prevent improper restrictions on the types of questions that defense counsel may ask during cross-examination.")(emphasis original); *See also Barber v. Page*, 390 U.S. 719, 725 (1968) ("The right to confrontation is basically a trial right.").  Because the right to confrontation under the Confrontation Clause is a trial right, it does not apply to other court proceedings that are not part of the jury trial, such as post-trial motions for a new trial. *See Penton v. Kernan,* 528 F. Supp.2d 1020, 1037 (S.D. Cal. 2007); *See also Stevens v. Maloney,* 32 F. Supp. 2d 478, 482-83 (D. Mass. 1998)(rejecting habeas petitioner's claim that he was denied the right of confrontation when he was denied the right to cross-examine the victim at a post-conviction hearing for a motion for a new trial).  Accordingly, petitioner is not entitled to habeas relief on this portion of his claim.

Petitioner further claims that the trial court prohibited him from presenting any witnesses at this post-trial hearing, other than Ms. McCracken, David

14

Foreman, and petitioner's trial counsel.  The Court, however, has reviewed the

pages of the evidentiary hearing cited to by petitioner and has not found any

ruling by the trial court which limited petitioner's ability to present additional

witnesses.  Conclusory allegations by a habeas petitioner, without any

evidentiary support, do not provide a basis for habeas relief. *See, e.g.,*

*Washington v. Renico,* 455 F. 3d 722, 733 (6th Cir. 2006)(bald assertions and

conclusory allegations do not provide sufficient ground to warrant requiring an

evidentiary hearing in a habeas proceeding); *Workman v. Bell*, 160 F. 3d 276,

287 (6th Cir. 1998)(conclusory allegations of ineffective assistance of appellate

counsel do not warrant habeas relief).

      Petitioner's primary claim is that he was deprived of a fair trial because

Ms. McCracken failed to disclose her prior relationship with Mr. Foreman during

jury selection.

      In order to obtain a new trial because a juror has given a mistaken

response to a question on *voir dire,* the litigant must demonstrate first, that the

juror failed to answer honestly a material question on *voir dire,* and secondly,

show that the correct response would have provided a valid basis for a challenge

for cause. *McDonough Power Equipment, Inc. v. Greenwood,* 464 U.S. 548, 556

(1984).  The Supreme Court noted that to invalidate a trial because of a juror's

mistaken but honest response to a *voir dire* question "is to insist on something

closer to perfection than our judicial system can be expected to give."

*McDonough*, 464 U.S. at 555.  Furthermore, although the motives for concealing

information by jurors may vary, "only those reasons that affect a juror's

impartiality can truly be said to affect the fairness of a trial." *Id.* at 556.

Of course, a juror may conceal information in a non-deliberate fashion,

through an "honest, but mistaken, response." *United States v. Solorio,* 337 F. 3d

580, 595 (6th Cir. 2003)(quoting *Zerka v. Green,* 49 F. 3d 1181, 1186, n. 7 (6th

Cir. 1995)).  However, if information is not deliberately concealed by a juror, bias

may not be inferred.  Instead, the defendant must show actual bias on the part of

the juror to obtain a new trial. *Solorio,* 337 F. 3d at 595-96.

The question of whether a trial court has seated a fair and impartial jury is

a factual one, involving an assessment of credibility. *Gall v. Parker,* 231 F. 3d

265, 308 (6th Cir. 2000)(citing *Patton v. Yount*, 467 U.S. 1025, 1038 (1984)).  A

state trial court's finding on the impartiality of a juror or a jury is a factual finding

that is presumed correct under § 2254 unless a habeas petitioner can prove

otherwise by convincing evidence. *Gall v. Parker,* 231 F. 3d at 334.  Here, the

state trial judge determined that Ms. McCracken had been a fair and impartial

juror, which is presumed correct in the absence of any clear and convincing

evidence to the contrary.

Petitioner is not entitled to habeas relief on his claim, because he has

failed to show that Ms. McCracken was actually biased against him. *See Dennis

v. Mitchell,* 354 F. 3d 511, 521 (6th Cir. 2003)(trial court's failure to remove juror

16

from panel after learning that she was victim of sexual abuse did not deprive

capital murder defendant of fair trial, and did not warrant federal habeas relief;

although juror failed to disclose during voir dire that she had been victim of

violent crime, there was no evidence that juror was intentionally deceitful and

trial court questioned juror after discovering that she had been sexual abuse

victim and found her to be impartial).  More specifically, petitioner has failed to

show that Ms. McCracken could have been challenged for cause had she

answered the voir dire questions accurately. *See Baker v. Craven,* 82 Fed.

Appx. 423, 429 (6th Cir. 2003).  The state court's finding that McCracken was not

biased is presumptively correct, and petitioner has not met his burden of

rebutting this presumption by clear and convincing evidence. *Id.*  Petitioner is not

entitled to habeas relief on his first claim.

### C.  Claims # 2 and # 3.  The *Brady* claims.

In his second claim and as a portion of his third claim, petitioner contends

that he was deprived of a fair trial because the prosecutor or police either

withheld or destroyed potentially exculpatory evidence.

To prevail on his claim, petitioner must show (1) that the state withheld

exculpatory evidence and (2) that the evidence was material either to guilt or to

punishment irrespective of good faith or bad faith of the prosecution. *Brady v.*

*Maryland,* 373 U.S. 83, 87 (1963).  Evidence is material only if there is a

reasonable probability that, had the evidence been disclosed to the defense, the

17

result of the proceeding would have been different.  A "reasonable probability is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley,* 473 U.S. 667, 683 (1985).  In *Strickler v. Greene,* 527 U.S. 263, 281-82 (1999), the Supreme Court articulated three components or essential elements of a *Brady* claim: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) prejudice must have ensued.  "Prejudice (or materiality) in the *Brady* context is a difficult test to meet." *Jamison v. Collins*, 291 F. 3d 380, 388 (6th Cir. 2002).

In his second claim, petitioner claims that the trial court should have dismissed his case because the police destroyed tape recordings of the victims made by Michigan State Police Trooper Joseph Jones.

The Michigan Court of Appeals rejected petitioner's claim, first, because petitioner failed to establish that the tape recordings contained exculpatory evidence, and secondly, because petitioner had failed to show that the police acted in bad faith in destroying the tapes. *Batey,* No. 227117, Slip. Op. at * 3-4.

The *Brady* rule extends to evidence that is not suppressed but is altered or destroyed. *See California v. Trombetta,* 467 U.S. 479, 489 (1984).  For such evidence to meet the standard of constitutional materiality, it "must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable

18

evidence by other reasonably available means." *Id.* at 488-89.

However, the failure of police to preserve evidence that is only potentially useful for a defendant is not a denial of due process of law unless the defendant can show bad faith on the part of police. *Arizona v. Youngblood*, 488 U.S. 51, 57-58 (1988). When the state fails to preserve evidentiary material "of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant," a defendant must show: (1) that the government acted in bad faith in failing to preserve the evidence; (2) that the exculpatory value of the evidence was apparent before its destruction; and (3) that the nature of the evidence was such that the defendant would be unable to obtain comparable evidence by other means. *Monzo v. Edwards,* 281 F. 3d 568, 580 (6th Cir. 2002). A habeas petitioner has the burden of establishing that the police acted in bad faith in failing to preserve potentially exculpatory evidence. *See Malcum v. Burt,* 276 F. Supp. 2d 664, 683 (E.D. Mich. 2003)(internal citations omitted). The mere fact that the police had control over evidence and failed to preserve it is insufficient, by itself, to establish bad faith, nor will bad faith be found in the government's negligent failure to preserve potentially exculpatory evidence. *Id.* "The presence of absence of bad faith by the police for purposes of the Due Process Clause must necessarily turn on the police's knowledge of the exculpatory value of the evidence at the time it was lost or destroyed." *Youngblood,* 488 U.S. at 56, n *.

19

Petitioner's claim fails because his contention that any of this evidence contained exculpatory material is entirely speculative. *See United States v. Jobson,* 102 F. 3d 214, 219 (6th Cir. 1996).  "Where '[t]here is no indication that there was anything exculpatory' about destroyed evidence, due process has not been violated." *Id.,* (quoting *United States v. Braggs*, 23 F.3d 1047, 1051 (6th Cir. 1994)).

Petitioner's claim also fails because he has not shown that the police acted in bad faith when they disposed of the tape recordings.  Petitioner's conclusory allegations regarding the alleged destruction of potentially exculpatory material fail to establish that the police, in bad faith, destroyed any evidence with knowledge of its exculpatory value. *See Malcum,* 276 F. Supp. 2d at 683.

Finally, at trial, defense counsel cross-examined the victims and Trooper Jones about the victims' prior statements to Trooper Jones.  In light of the fact that the same information that was contained within these audiotaped interviews came from the witnesses themselves, petitioner is unable to establish that the destruction of these tapes deprived petitioner of his due process right to a fair trial. *See Bowling v. Parker,* 138 F. Supp. 2d 821, 885 (E.D. Ky. 2001).

In his third claim, petitioner claims that the prosecutor committed a *Brady* violation by failing to disclose the psychiatric or mental health records of the

20

victims to petitioner.

Petitioner is not entitled to habeas relief on his claim. The prosecutor did not withhold this evidence. Instead, the trial judge reviewed the victims' psychological records *in camera* and determined that the privileged psychological records did not contain any relevant or helpful information. On remand, the Michigan Court of Appeals also reviewed the sealed records and likewise concluded that the victims' psychological records did not contain any information that supported petitioner's theory that MA fabricated the sexual assault charges against petitioner. *Batey,* (On Remand) No. 227117, Slip. Op. at * 1. The Michigan Court of Appeals further noted that petitioner was able to attack the victims' credibility without their medical records, in that he was able to present testimony that MA suffered from auditory hallucinations and that JA had a substance abuse problem and a reputation for lying. *Id.* at * 2. Lastly, with respect to petitioner's claim that the records were necessary to counter the prosecutor's implication that petitioner's sexual abuse caused MA's mental breakdown, the Michigan Court of Appeals noted that there was no direct evidence in the records concerning the cause of MA's breakdown. The Michigan Court of Appeals further noted that evidence that MA had been sexually assaulted by JA and by his biological father, so as to suggest that these prior sexual assaults may have been the cause of his hospitalization, had already been presented to the jury. *Id.*

21

Petitioner is not entitled to habeas relief on his claim.  First, the psychological records that petitioner sought were privileged.  The trial judge's decision to deny petitioner's request for access to the victims' psychiatric records was not contrary to or an unreasonable application of federal law, as required for habeas relief, in light of the fact that the records were privileged and there is no clearly established federal law that answers whether a state's psychotherapist-patient privilege must yield to a criminal defendant's desire to use such confidential information in defense of a criminal case. *See Johnson v. Norris,* 537 F.3d 840, 845-47 (8th Cir. 2008)

The state's purported suppression of the victims' psychiatric records did not prejudice petitioner, as required to establish *Brady* violation, in light of the fact that there was substantial additional evidence that impeached the victims and that rebutted any theory that petitioner caused MA's mental breakdown, including evidence that MA suffered from auditory hallucinations and had been sexually assaulted by JA and his biological father, and that JA had a substance abuse problem and a reputation for lying. *See Brooks v. Tennessee,* 626 F. 3d 878, 893-94 (6th Cir. 2010).  Petitioner is not entitled to habeas relief on this portion of his third claim.

### D. Claims # 3 and # 4.  The Confrontation Clause claims.

In a portion of his third claim and again in the supplement to his fourth

22

claim that he raises in his supplemental brief, petitioner claims that he was denied the right of confrontation.

As part of his third claim, petitioner claims that his right of confrontation was violated because he was denied access to the victim's psychiatric records. In his supplement to his fourth claim, petitioner argues that he was denied his right of confrontation because the trial judge precluded him from cross-examining the witnesses about JA's sexual relationship with MA.

With respect to petitioner's third claim, as mentioned when discussing his *Brady* claim, *supra,* the psychiatric records that were sought by petitioner contained confidential, privileged information. The trial judge conducted an *in camera* review of the records and determined that they did not contain exculpatory or impeaching information. The Michigan Court of Appeals likewise concluded after its own review of the sealed records that they did not contain information that would be beneficial to petitioner.

"[T]he Confrontation Clause guarantees only 'an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, that the defendant might wish.'" *United States v. Owens*, 484 U.S. 554, 559 (1988)(internal quotations omitted). The Confrontation Clause of the Sixth Amendment does not prevent a trial judge from imposing limits on a defense counsel's inquiry into potential bias of a prosecution witness; to the

23

contrary, trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, a witness' safety, or interrogation that is repetitive or only marginally relevant. *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986).

There is no clearly established federal law that requires that a defendant be permitted to use confidential, privileged information to impeach a witness. In *Pennsylvania v. Ritchie*, 480 U.S. at 53–54, a plurality of the Supreme Court ruled that a defendant's right of cross-examination was not violated when a child protective service agency refused to turn over its confidential records to him, on the ground that the records were privileged under state law. *Id.* at 43–46. In so ruling, the Supreme Court stated, "[t]he ability to question adverse witnesses ... does not include the power to require the pretrial disclosure of any and all information that might be useful in contradicting unfavorable testimony." *Id.* at 53.

In *Middlebrooks v. Bell*, 619 F. 3d 526, 541–43 (6th Cir. 2010); *cert. granted, judgment vacated on other grounds*, 132 S. Ct. 791 (2012), the Sixth Circuit refused to find a Confrontation Clause violation involving a claim almost identical to the one brought by petitioner. In *Middlebrooks*, the state trial judge denied the petitioner's request to examine a witness' psychiatric hospital records for impeachment purposes, as well as his request to conduct an *in camera*

24

inspection of those records. *Id.* at 541.  The petitioner was given a full

opportunity to cross-examine the witness, and was permitted to ask the witness

about the hospital records in question. *Id.* at 542.  The Sixth Circuit held, "[i]t is

clear ... that for now there is no clearly established federal law indicating that the

trial court's failure to order disclosure of [the witness'] hospital records violated

[the defendant's] confrontation rights." *Id.* at 542–43.  The court Sixth Circuit

further emphasized that the defendant's trial counsel "received wide latitude to

question" the witness. *Id.* at 543.

In the present case, unlike the trial judge in *Middlebrooks,* the trial judge

agreed to review the victims' mental health records *in camera* and determined

that they did not contain any exculpatory information.  In the absence of any

clearly established federal law that requires that a criminal defendant be able to

use privileged, confidential information to impeach a witness, the trial judge's

refusal to turn the victims' medical records over to petitioner did not amount to a

violation of his right to confrontation, so as to entitle him to habeas relief.  In light

of the fact that petitioner was able to elicit testimony from the witnesses

concerning MA's auditory hallucinations, JA's substance abuse and his

reputation for lying, as well as information that MA had been sexually assaulted

by JA and his father, petitioner was afforded an adequate opportunity to impeach

the witnesses' credibility.

As part of his fourth claim, petitioner argues that his right to confrontation

25

was violated when he was not permitted to question MA and JA about sexual activity between the two victims.  Prior to trial, the trial court judge ruled that evidence of sexual activity between MA and JA could not be admitted at trial. However, the prosecutor introduced into evidence a letter that MA wrote to petitioner and petitioner's taped statement to the police, both of which referred to the sexual activity between MA and JA.

Assuming that the trial judge erred in refusing to permit counsel to question the victims about their sexual activity, any error was harmless because the prosecutor introduced MA's letter to the police and petitioner's statement to the police, both of which referenced the sexual activity between the two victims. Petitioner's counsel was able to mention the sexual activity between the victims, albeit in truncated form, in his closing argument.

Confrontation Clause violations are subject to harmless error review. *See Bulls v. Jones,* 274 F. 3d 329, 334 (6th Cir. 2001).  In *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993), the U.S. Supreme Court held that for purposes of determining whether federal habeas relief must be granted to a state prisoner on the ground of federal constitutional error, the appropriate harmless error standard to apply is whether the error had a substantial and injurious effect or influence in determining the jury's verdict.  In determining whether a Confrontation Clause violation is harmless under *Brecht*, a court should consider the following factors: "(1) the importance of the witness' testimony in the

26

prosecution's case; (2) whether the testimony was cumulative; (3) the presence
or absence of evidence corroborating or contradicting the testimony of the
witness on material points; (4) the extent of cross examination otherwise
permitted; and (5) the overall strength of the prosecution's case." *See Jensen v.
Romanowski,* 590 F. 3d 373, 379 (6th Cir. 2009).

In light of the fact that evidence concerning the sexual activity between the
victims was introduced into evidence by the prosecutor and in defense counsel's
closing argument, the trial court's refusal to permit counsel to question the
victims about whether there had been any sexual activity between the two was
harmless error.  Petitioner is not entitled to habeas relief on his Confrontation
Clause claims.

### E. Claim # 5.  The right to present a defense claim.

Petitioner next contends that he was denied his right to present a defense
when the trial court excluded impeachment evidence that consisted of
photographs that petitioner claims would have impeached JA's testimony.

The Michigan Court of Appeals rejected petitioner's claim:

Batey sought to admit into evidence photographs that purportedly
demonstrated that it was impossible for JA to see into Batey's
bedroom from the place where he was standing when he claimed to
have seen Batey molesting MA.  Evidently, he had these photographs
taken at a late date, because defense counsel did not receive the
photographs until after the trial had commenced, and argued that they
should be admissible at that late time because JA had changed his
testimony at trial from his testimony at the preliminary examination.  As

27

defense counsel put it, the photographs should be admissible as if they were rebuttal evidence to surprise testimony.

The trial court, however, determined that JA's trial testimony was not materially different from his testimony at the preliminary examination on this subject and, therefore, the photographs were not responsive to surprise testimony at trial. Additionally, the trial court found that the photographs violated the discovery order and would be misleading because they did not "show all of the possible perspectives that the witness would have been able to observe." We see no error in the trial court's reasoning. We add that other witness testimony on behalf of Batey informed the jury that it was not possible to see into Batey's bedroom from every angle in the hallway. Furthermore, though Batey claims that MCR 6.201(H) required these photographs to be admitted, the argument is meritless because the photographs were taken, not "discovered," and the trial court ruled that the photographs violated its discovery order, not the court rules governing discovery.

*Batey,* No. 227117, Slip. Op. at * 5 (internal footnote omitted).

Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he also has the right to present his own witnesses to establish a defense. This right is a fundamental element of the due process of law. *Washington v. Texas*, 388 U.S. 14, 19 (1967); *See also Crane v. Kentucky,* 476 U.S. 683, 690 (1986)("whether rooted directly in the Due Process Clause of the Fourteenth Amendment, or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense'")(internal citations omitted). However, an accused in a criminal case does not have an unfettered right to offer evidence that is incompetent,

28

privileged, or otherwise inadmissible under the standard rules of evidence.

*Montana v. Egelhoff*, 518 U.S. 37, 42 (1996).  The Supreme Court, in fact, has

indicated its "traditional reluctance to impose constitutional constraints on

ordinary evidentiary rulings by state trial courts." *Crane,* 476 U.S. at 689.  The

Supreme Court gives trial court judges "wide latitude" to exclude evidence that is

repetitive, marginally relevant, or that poses a risk of harassment, prejudice, or

confusion of the issues. *Id.* (quoting *Van Arsdall,* 475 U.S. at 679).

Under the standard of review for habeas cases as enunciated in §

2254(d)(1), it is not enough for a habeas petitioner to show that the state trial

court's decision to exclude potentially helpful evidence to the defense was

erroneous or incorrect.  Instead, a habeas petitioner must show that the state

trial court's decision to exclude the evidence was "an objectively unreasonable

application of clearly established Supreme Court precedent." *See Rockwell v.

Yukins,* 341 F. 3d 507, 511-12 (6th Cir. 2003).

Although the Sixth Amendment Compulsory Process Clause may be

violated by imposing a discovery sanction that entirely excludes the testimony of

a material defense witness, *See Taylor v. Illinois*, 484 U.S. 400, 409 (1988), the

Compulsory Process Clause does not create an absolute bar to the preclusion of

the testimony of a defense witness by the court as a sanction for violating a

discovery rule. *Id.* at 610.  Although recognizing the constitutional significance of

a criminal defendant's ability to present favorable evidence, the Supreme Court

29

in *Taylor* also emphasized a state's interest in conducting orderly criminal trials and in creating enforceable rules for identifying and presenting evidence. *Taylor*, 484 U.S. at 410-11.  Although the Supreme Court declined to "draft a comprehensive set of standards to guide the exercise" of a trial court's discretion to sanction a party for failing to comply with discovery rules, the Supreme Court identified several factors that would be relevant in determining whether a discovery sanction would be constitutional. *Id.* at 414-15.  These factors included a defendant's right to present exculpatory evidence, the integrity of the adversarial system, the interest in administering justice fairly and efficiently, potential prejudice to the truth-seeking role of criminal trials, the reasons for failure to comply with discovery rules, and the relative ease of compliance with the rules. *Id.* at 414-16.

In the present case, the Michigan Court of Appeals did not unreasonably apply clearly established federal law in rejecting petitioner's claim.  The trial judge determined that JA's trial testimony was not materially different from his testimony at the preliminary examination, therefore, these new photographs were not admissible on the ground that they were in response to surprise testimony.  The trial court ruled that the new photographs could not be admitted because they violated the discovery order.  Because clearly established federal law permits the exclusion of evidence that violates a discovery order, the judge's ruling was not contrary to clearly established federal law. *See e.g. Johnson v.*

30

*Wolfe*, 44 Fed.Appx. 702, 716 (6th Cir. 2002).

The trial court's exclusion of these new photographs was not so egregious that it effectively denied petitioner a fair trial, in light of the fact that petitioner was not completely barred from presenting testimony that it was not possible to see into petitioner's bedroom from every angle of the hallway, so as to impeach JA's testimony. *See Fleming v. Metrish*, 556 F. 3d 520, 535-36 (6th Cir. 2009); *See also Perkins v. McKee,* 411 Fed.Appx. 822, 826 (6th Cir. 2011)(exclusion of defense witness as sanction for violation of discovery order did not deprive petitioner of the right to present a defense, when excluded defense witness' testimony was cumulative of evidence presented at trial).  With the quantum of evidence on the defense theory in the record, this Court concludes that the petitioner was afforded "a meaningful opportunity to present a complete defense." *Allen v. Howes,* 599 F. Supp. 2d 857, 873 (E.D. Mich. 2009)(citing *Crane*, 476 U.S. at 690 (citation and internal quotations omitted)).  Petitioner is not entitled to habeas relief on his fifth claim.

**F.  Claim # 6.  The prosecutorial misconduct claims.**

In his sixth claim, petitioner raises several prosecutorial misconduct claims that were not adjudicated by this Court in its prior opinion and order.

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004)(citing *Bowling v.*

31

*Parker*, 344 F.3d 487, 512 (6th Cir. 2003)). A prosecutor's improper comments will be held to violate a criminal defendant's constitutional rights only if they "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)(quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). Prosecutorial misconduct will form the basis for habeas relief only if the conduct was so egregious as to render the entire trial fundamentally unfair based on the totality of the circumstances. *Donnelly v. DeChristoforo*, 416 U.S. at 643-45; *See also Caldwell v. Russell*, 181 F.3d 731, 736 (6th Cir. 1999)(stating that "[p]rosecutorial misconduct may warrant habeas relief only if the relevant misstatements were so egregious as to render the entire trial fundamentally unfair to a degree tantamount to a due process deprivation"). The determination of whether the trial was fundamentally unfair is "made by evaluating the totality of the circumstances surrounding each individual case." *Angel v. Overberg*, 682 F. 2d 605, 608 (6th Cir. 1982). The Court must focus on "'the fairness of the trial, not the culpability of the prosecutor.'" *Pritchett v. Pitcher*, 117 F. 3d 959, 964 (6th Cir. 1997) (quoting *Serra v. Michigan Dep't of Corr.*, 4 F.3d 1348, 1355 (6th Cir. 1993)). Finally, "[t]he Supreme Court has clearly indicated that the state courts have substantial breathing room when considering prosecutorial misconduct claims because 'constitutional line drawing [in prosecutorial misconduct cases] is necessarily imprecise.'" *Slagle v. Bagley*, 457 F. 3d 501, 516 (6th Cir. 2006)(quoting *Donnelly*, 416 U.S. at 645). In order to

32

obtain habeas relief on a prosecutorial misconduct claim, a habeas petitioner must show that the state court's rejection of his prosecutorial misconduct claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Parker v. Matthews*, 132 S. Ct. 2148, 2155 (2012)(quoting *Harrington*, 131 S. Ct., at 786–87). This is particularly so, "because the *Darden* standard is a very general one, leaving courts 'more leeway ... in reaching outcomes in case-by-case determinations[,]'". *Id.* (quoting *Yarborough v. Alvarado*, 541 U.S. at 664).

Petitioner first contends that the prosecutor improperly commented on his Fifth Amendment right to remain silent and not testify. Petitioner points to the prosecutor's remarks that "There's only one other person that knows what happened and that's the defendant." The prosecutor further argued that petitioner "never denied he didn't have an opportunity to be alone with the children."

In *Griffin v. California*, 380 U.S. 609 (1965), the United States Supreme Court held that neither the court nor the prosecutor may invite the jury to infer guilt from the defendant's decision not to testify. They may not "solemnize [ ] the silence of the accused into evidence against him," 380 U.S. at 614, or "suggest[ ] to the jury that it may treat the defendant's silence as substantive evidence of guilt." *Baxter v. Palmigiano*, 425 U.S. 308, 319 (1976) (emphasis added).

33

However, while a prosecutor may not comment on the defendant's failure to testify or produce evidence, the prosecutor may summarize the evidence and comment upon "its quantitative and qualitative significance." *United States v. Bond*, 22 F. 3d 662, 669 (6th Cir. 1994)

When a prosecutor's remark or statement indirectly comments on a habeas petitioner's decision not to testify, a federal court in the Sixth Circuit should use four factors to evaluate such a statement: "1) Were the comments 'manifestly intended' to reflect on the accused's silence or of such a character that the jury would 'naturally and necessarily' take them as such; 2) were the remarks isolated or extensive; 3) was the evidence of guilt otherwise overwhelming; 4) what curative instructions were given and when." *Bowling,* 344 F. 3d at 514 (quoting *Lent v. Wells*, 861 F. 2d 972, 975 (6th Cir. 1988)).  In reviewing indirect comments touching on a defendant's failure to testify, a court should not find a manifest intent to comment on the right to remain silent if some other explanation for the prosecutor's remarks is equally plausible, such as when a comment is a fair response to a claim made by the defendant or his counsel. *See Gall v. Parker,* 231 F. 3d at 311 (internal citations omitted).

The Sixth Circuit has indicated that "'[g]eneral references to evidence as uncontradicted, while not recommended, may not reflect on the defendant's failure to testify where witnesses other than the defendant could have contradicted the evidence.'" *Byrd v. Collins*, 209 F. 3d 486, 534 (6th Cir.

34

2000)(quoting *Raper v. Mintzes*, 706 F.2d 161, 164 (6th Cir. 1983)); *See also*

*Joseph v. Coyle,* 469 F. 3d 441, 474 (6th Cir.  2006).

In the present case, petitioner's statement to the police was admitted into evidence.  Although petitioner told the police that the victims' allegations were false, he admitted that he did not "have a clue" as to why the victims were bringing these charges.  The prosecutor's comments were apparently inferred from petitioner's own statement to the police.  However, the prosecutor's comments could be viewed as inviting the jury's attention to defendant's choice not to testify.  In any event, petitioner is not entitled to habeas relief on this claim, because the prosecutor's remarks were neither flagrant or repeated. *Joseph,* 469 F. 3d at 474.  Petitioner would finally not be entitled to habeas relief on this claim, in light of the trial court's instruction to the jury about petitioner's right not to testify. (Tr. 5/19/1999, p. 115). *Id.*

Petitioner next claims that the prosecutor improperly commented on his untruthfulness by calling him a liar or a con man.

In the present case, although petitioner did not testify, his statement to the police, in which he denied sexually assaulting the victims, was admitted into evidence.  Because the prosecutor's remarks concerning petitioner were most likely linked to the evidence presented at trial, they were not improper. *See Wogenstahl v. Mitchell,* 668 F. 3d 307, 331 (6th Cir. 2012); *cert. den.* 133 S.Ct.

311 (2012).

Petitioner next contends that the prosecutor elicited testimony from MA

concerning petitioner's religious beliefs.  During MA's direct questioning, the

prosecutor asked him how he felt about petitioner at the time of the sexual abuse

and then how MA felt about Batey at the time of trial.

> Q. So, you were trying to get him to stop, to tone it down.
>
> A. Yes.
>
> Q. Okay.
>
> A. It was a little bit much.
>
> Q. Did you, when you wrote that letter, you indicated that you were best friends.
>
> A. Yes, I did think that I was his best friend.
>
> Q. Do you feel that way today?
>
> A. No I do not.
>
> Q. What's changed?
>
> A. Well, I found out that some of the things, most of the things that he had told me was lies. He told me things like he had told me that he was - - certain things like when he found out that [JA] was doing Satanis[m], Devil Worship, that he said that he knew something about it and that he would stop people in the navy and he would approach them on them worship[p]ing Satanism and he would tell them to stop, and yet he told me that he studied Witchcraft or White Magic he said it was, or Black Magic, I don't remember which one, but I think it was White Magic, and he had showed me something about how to talk to God. He said that it was you take a piece of paper and you draw a cross on there and the vertical like you say - - or, the - - yeah, you say on the vertical line you put a yes and on the horizontal line of the cross you put no, and you put an X through it and you put better not known or unknown and then you put a circle around the middle and you put undecided, and you take a piece of string and you tie it to a stick and you take like a loop, like a key ring, and you hold it over there and you say a prayer and then you ask a question and it starts to move. It just starts to move for some

36

reason. I don't know how it moves but it just moves.

Q. So, your uncle would tell you this kind of stuff in addition to all the homosexual stuff.

A. Yeah, yes.

Q. And, you think now it was all lies.

A. Yes, I do think it was lies. . . .

(Tr. 5/17/99, pp. 150-52).

The prosecutor's brief reference to petitioner's religious beliefs do not entitle him to relief. The prosecutor's comments were isolated, there is no indication that they misled the jury, and the prosecutor made no other reference to religion in his case. *See U.S. v. Roach,* 502 F. 3d 425, 435-36 (6th Cir. 2007)((in prosecution of two police officers for depriving two Hispanic victims of their civil rights under color of law by stealing money from them during a traffic stop, prosecutor's closing argument comment that the Commandment, "thou shalt not steal" did not say thou shalt not steal from people you know, or from citizens, or from white people, while improper, was not flagrant, prosecutor's comment was isolated and there was no indication that it misled the jury, and government made no other reference to religion); *Hicks v. Collins,* 384 F. 3d 204, 223 (6th Cir. 2004)(prosecutor's ambiguous reference to "fate, God, a deity or something" as source of responsibility for death sentence, to extent it may have improperly interjected religion, was harmless, isolated statement). In light of the additional evidence in this case, the prosecutor's brief references to

37

religion while questioning MA did not have a substantial and injurious effect or influence in determining the jury's verdict and, do not entitle petitioner to habeas relief. *See McCary v. Lewis,* 255 Fed.Appx. 78, 79-80 (6th Cir. 2007).

Petitioner next contends that the prosecutor improperly urged the jurors to convict petitioner to prevent other crimes and that he also invoked sympathy for the victims.

As to civic or societal duty arguments, the Sixth Circuit has noted that, "[u]nless calculated to incite the passions and prejudices of the jurors, appeals to the jury to act as the community conscience are not *per se* impermissible." *Byrd v. Collins,* 209 F. 3d at 539)(quoting *United States v. Solivan*, 937 F. 2d 1146, 1151 (6th Cir. 1991)).

In this case, the prosecutor's "less than-pointed-remarks" about the scourge of sex involving children did not rise to the level of remarks designed to incite prejudice in a jury, defeating petitioner's "civic duty" argument claim. *See Puetas v. Overton,* 168 Fed. Appx. 689, 701 (6th Cir. 2006). The prosecutor did not make an improper civic duty argument, because the prosecutor's comments appeared to be made in response to defense counsel's defense that MA was not credible. *See Knapp v. White,* 296 F. Supp. 2d 766, 776 (E.D. Mich. 2003). Additionally, the trial court's instruction to the jury that they must not let prejudice or sympathy influence their decision (Tr. 5/19/1999, p. 114) defeats petitioner's

38

claim that he was deprived of a fair trial because of an improper civic duty argument. *Id.* Finally, because the prosecutor's civic duty argument was an isolated part of the closing argument, petitioner is not entitled to habeas relief. *See Martin v. Foltz,* 773 F. 2d 711, 716-17 (6th Cir. 1985).

The Court will likewise reject petitioner's claim that the prosecutor attempted to invoke sympathy for the victims. This portion of petitioner's claim would also be defeated by the fact that the trial court instructed the jury that they were not to let sympathy or prejudice influence their decision. *See Cockream v. Jones,* 382 Fed. Appx. 479, 486 (6th Cir. 2010). Even if the prosecutor's appeals to the jury's emotions or sympathies was improper, this would be insufficient to render the trial fundamentally unfair, since it was likely that the nature of the crime itself would have produced juror sympathy even before the prosecutor made any of these comments. *See Millender v. Adams,* 187 F. Supp. 2d 852, 875-76 (E.D. Mich. 2002)(citing *Walker v. Gibson*, 228 F. 3d 1217, 1243 (10th Cir. 2000)).

Petitioner next contends that the prosecutor improperly argued that petitioner's sexual assaults were the cause of MA's mental breakdown, because there was no evidence to support this proposition.

Misrepresentation of facts in evidence by a prosecutor can amount to substantial error because doing so "may profoundly impress a jury and may

39

have a significant impact on the jury's deliberations." *Washington v. Hofbauer,*
228 F. 3d 689, 700 (6th Cir. 2000)(quoting *Donnelly v. DeChristoforo*, 416 U.S. at
646).  Likewise, it is improper for a prosecutor during closing arguments to bring
to the jury any purported facts which have not been introduced into evidence and
which are prejudicial. *Byrd*, 209 F. 3d at 535.  However, prosecutors must be
given leeway to argue reasonable inferences from the evidence. *Id.*

In the present case, there was some record support for the prosecutor's
argument, because MA himself indicated that he was placed in a mental health
facility because of the sexual assault.  JA and David Foreman confirmed this.
Because there was at least some factual support on the record for the
prosecutor's argument, the prosecutor's remarks did not deprive petitioner of a
fair trial. *See U.S. v. Henry*, 545 F.3d 367, 377 (6th Cir. 2008).  Petitioner was not
deprived of a fair trial because of prosecutorial misconduct.

### G.  Claim # 7.  The ineffective assistance of counsel claims.

Petitioner lastly contends that he was deprived of the effective assistance
of trial and appellate counsel.

To show that he was denied the effective assistance of counsel under
federal constitutional standards, a defendant must satisfy a two prong test.  First,
the defendant must demonstrate that, considering all of the circumstances,
counsel's performance was so deficient that the attorney was not functioning as

40

the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id.*  In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689.  Second, the defendant must show that such performance prejudiced his defense. *Id.*  To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694.  "*Strickland*'s test for prejudice is a demanding one. 'The likelihood of a different result must be substantial, not just conceivable.'" *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011)(quoting *Harrington*, 131 S. Ct. at 792).  The Supreme Court's holding in *Strickland* places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. *See Wong v. Belmontes*, 130 S. Ct. 383, 390-91 (2009).  The *Strickland* standard applies as well to claims of ineffective assistance of appellate counsel. *See Whiting v. Burt,* 395 F. 3d 602, 617 (6th Cir. 2005).

Petitioner initially contends that trial counsel did not adequately argue the motion to dismiss the criminal charges based on the destruction of the tape

41

recorded interviews with the victims.  As mentioned when discussing petitioner's second claim, *supra,* petitioner has failed to show that these tape recordings contained exculpatory material or that the police destroyed them in bad faith. Because petitioner has failed to show that the tape recordings were exculpatory or that the police acted in bad faith in failing to preserve them, trial counsel was not ineffective in his handing of the motion to dismiss on this basis. *See Monzo v. Edwards,* 281 F.3d at 580.

Petitioner next contends that counsel failed to argue that the Rape Shield Act permitted him to cross-examine MA and JA about the sexual activity between the two victims.  In light of the fact that this evidence was ultimately admitted, petitioner is unable to show that he was prejudiced by counsel's failure to better argue for the admission of this evidence.

Petitioner next argues that his trial counsel was ineffective for failing to file an interlocutory appeal from several of the judge's pre-trial rulings.  Petitioner is unable to show that he was prejudiced by trial counsel's failure to file an interlocutory appeal because the Michigan Court of Appeals eventually addressed the claims that petitioner wished to raise in an interlocutory appeal on his appeal of right and found them to be meritless.  Because petitioner has failed to show that trial counsel was ineffective for failing to file an interlocutory appeal, he is not entitled to habeas relief. *See e.g. McKenzie v. Jones,* 100 Fed. Appx. 362, 363-64 (6th Cir. 2004).

42

Petitioner next contends that his counsel was ineffective for failing to object to the prosecutorial misconduct that he complains of in his sixth claim. To show prejudice under *Strickland* for failing to object to prosecutorial misconduct, a habeas petitioner must show that but for the alleged error of his trial counsel in failing to object to the prosecutor's improper questions and arguments, there is a reasonable probability that the proceeding would have been different. *Hinkle v. Randle,* 271 F. 3d 239, 245 (6th Cir. 2001). Because the Court has already determined that the prosecutor's questions and comments did not deprive petitioner of a fundamentally fair trial, petitioner is unable to establish that he was prejudiced by counsel's failure to object to these questions or comments. *Slagle,* 457 F. 3d at 528.

Petitioner also contends that he was deprived of the effective assistance of appellate counsel for failing to raise some of his claims on his appeal of right or for failing to properly preserve them.

The Sixth Amendment guarantees a defendant the right to the effective assistance of counsel on the first appeal by right. *Evitts v. Lucey*, 469 U.S. 387, 396-397 (1985). However, court appointed counsel does not have a constitutional duty to raise every nonfrivolous issue requested by a defendant. *Jones v. Barnes*, 463 U.S. 745, 751 (1983). This Court has already determined that petitioner's claims are without merit. "[A]ppellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit.'" *Shaneberger v.*

43

*Jones*, 615 F. 3d 448, 452 (6th Cir. 2010)(quoting *Greer v. Mitchell*, 264 F.3d

663, 676 (6th Cir. 2001)).  Because none of these claims can be shown to be

meritorious, appellate counsel was not ineffective in the handling of petitioner's

direct appeal.  Petitioner is not entitled to habeas relief on his ineffective

assistance of appellate counsel claim.

## IV. Conclusion

For the reasons discussed, state court adjudication of the petitioner's

claims did not result in a decision that was contrary to, or involved an

unreasonable application of, clearly established federal law as determined by the

United States Supreme Court.  Nor did the state court adjudication result in a

decision that was based on an unreasonable determination of the facts in light of

the evidence presented in the state court proceeding.  This Court concludes that

the petitioner is not entitled to federal habeas relief on the remaining claims

contained in his original and amended petitions.

In order to obtain a certificate of appealability, a prisoner must make a

substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).

To demonstrate this denial, the applicant is required to show that reasonable

jurists could debate whether, or agree that, the petition should have been

resolved in a different manner, or that the issues presented were adequate to

deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473,

44

483-84 (2000).  When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484.  "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

This Court denies a certificate of appealability because reasonable jurists would not find this Court's assessment of the claims to be debatable or wrong. *See Slack v. McDaniel*, 529 U.S. at 484.  Petitioner may, however, proceed *in forma pauperis* on appeal because an appeal could be taken in good faith. 28 U.S.C. § 1915(a)(3).

## V.  ORDER

Based upon the foregoing, IT IS ORDERED that the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE.**

IT IS FURTHER ORDERED That a certificate of appealability is **DENIED.**

IT IS FURTHER ORDERED that the petitioner will be **GRANTED** leave to appeal *in forma pauperis.*

S/Denise Page Hood
United States District Judge

Dated:  April 30, 2013

45

I hereby certify that a copy of the foregoing document was served upon counsel of record on April 30, 2013, by electronic and/or ordinary mail.

S/LaShawn R. Saulsberry

Case Manager